H.   NORTON, Appellant, v. WILSON LUMPKIN *et al.*,
Appellees.

.Sale: BONA FIDE PURCHASER: UNRECORDED MORTGAGE: NOTICE: FRAUD.
The defendant L. having executed and delivered a mortgage upon his
: stock of lumber to the plaintiff, and being insolvent, and unable to
pay an indebtedness to the defendant W. of less than one-half the
value of his stock, made to W. a bill of sale of said stock, for which

W. gave his notes to L. in the sum of forty-five hundred dollars. The plaintiff's mortgage was not recorded, and W. took the bill of sale without actual notice thereof. The transaction between L. and W. was hastily consummated, no invoice of the property being taken before the purchase, and W., without knowing the value of the property, gave his notes therefor to L. for several hundred dollars more than it was worth, and accepted the bill of sale without reading it. W., as county treasurer, however, was in immediate need of money to enable him to make his settlement with the board of supervisors, and had an agreement with L. that the property should be invoiced, and that any deficiency in value should be credited on the notes. After receiving the bill of sale W. obtained a loan at a bank of the size of one of the notes given to L., depositing the bill of sale as security therefor, and L. turned over to the bank the other note given by W., to apply upon L.'s indebtedness to the bank. At the time of this transaction one of the officers of the bank knew of the mortgage to the plaintiff, but was told that he had waived it in order that the sale might be made, and another of its officers had known of it, but had forgotten it. *Held*, that W. was entitled to protection as an innocent purchaser as against the plaintiff's mortgage to the full amount of the consideration given though he acquired notice of said mortgage before the notes aforesaid were paid, and that the bank's title to the notes were not subject to attack by the plaintiff.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, OCTOBER 9, 1891.

ACTION in equity to recover the amount due on two promissory notes, for the foreclosure of a chattel mortgage, and for general equitable relief. There was a hearing on the merits, and a judgment in favor of the plaintiff for a part only of the relief demanded. He appeals.—*Affirmed*.

*John F. Duncombe, M. D. O'Connell* and *John Doud, Jr.*, for appellant.

*R. M. Wright*, for appellees.

ROBINSON, J.—The defendant Lumpkin, for several years prior to January, 1888, owned and carried on at

Ft. Dodge a lumber yard. In January, 1883, he borrowed of the plaintiff the sum of forty-five hundred dollars, and to secure its payment executed a chattel mortgage on his stock of lumber. Some payments were made on the loan, and it was renewed from time to time, and new mortgages given as security. In January, 1887, the loan was again renewed, and the notes in suit, one of which was for one thousand dollars, payable on the first day of November, 1887, and the other for twenty-five hundred dollars, payable on the twenty-fourth day of January, 1888, each bearing interest at the rate of ten per cent. per annum, were given to secure the payment of these notes. A mortgage was executed, but it was not satisfactory to the plaintiff, who returned it, and received in exchange the one involved in this action. It was executed on the sixteenth day of July, 1887, and was upon the entire stock of lumber, sash, doors, building-paper, screen doors and fence posts, which composed the stock of the mortgagor. That mortgage was not recorded until the twenty-fourth day of January, 1888, and none of the mortgages preceding it were ever recorded. Payments amounting to three hundred and nineteen dollars and twenty-one cents have been made on the notes. On the fifth day of January, 1888, Lumpkin gave to the defendant, D. A. Weller, a bill of sale conveying the mortgaged property, a safe, scales and office furniture. The consideration named in the bill of sale was four thousand dollars. Two notes were given for it by Weller to Lumpkin, one of which was for seventeen hundred dollars and the other for twenty-three hundred dollars.

It is claimed by the plaintiff, in effect and substance, that the alleged sale from Lumpkin to Weller was not in good faith, but was fraudulent; that, before payment for the property was made, Weller had actual

notice of the mortgage of the plaintiff; that, when the sale was made, Weller had actual knowledge of the mortgage of the plaintiff; that, if he did not have actual notice, he had knowledge of such facts as that he was chargeable with notice; that his agents in the transaction had actual knowledge of the mortgage, and, therefore, that he had constructive notice; and that the transaction was really for the benefit of the intervener, which knew at the time it took place, through its officers, of the existence of the mortgage. The district court rendered judgment in favor of the plaintiff and against Lumpkin for thirty-eight hundred and ninety-one dollars and sixty cents, but on the question of priority of liens found in favor of Weller and the bank, the latter having intervened in the action.

Weller was treasurer of Webster county during the term of two years, which ended in January, 1888; and Blanden, the president, and Scott, the cashier, of intervener, were sureties on his official bond. During the year 1887, Lumpkin had borrowed of Weller various sums of money, and in the latter part of December of that year, and until the bill of sale and notes in controversy were given, in 1888, owed him seventeen hundred dollars. Both Weller and Lumpkin were insolvent at the time. Weller could not make his final settlement with the board of supervisors without the money which Lumpkin was owing him, and he made frequent demands for it, but Lumpkin was unable to pay it. At length it was arranged that Lumpkin should sell the lumber yard to Weller, and that the latter should give his notes therefor; that one of the notes should be for the sum of seventeen hundred dollars, and the other for the sum of twenty-three hundred dollars; but that an invoice of stock should be taken, and, if its value was found to be less than four thousand dollars, then that a credit for the deficiency should be given on the large note. The sale was made

and the notes were given pursuant to the agreement. The seventeen-hundred-dollar note was presented to the intervener for discount, but, as Lumpkin was then owing it a large amount, Weller gave a new note in lieu of it, which was made payable to the intervener. The amount of the note was placed to the credit of Weller, and the bill of sale was left as security for the payment of the note. Lumpkin turned the twenty-three-hundred-dollar note over to the intervener to apply on his indebtedness to it.

Weller testifies positively that he had no knowledge whatever of the mortgage to the plaintiff until after he had purchased the lumber yard, taken possession of it, and given his notes for it. He is corroborated in that by Lumpkin. It is insisted by the appellant that Weller must have known that Lumpkin was financially embarrassed when the bill of sale was made, for the reason that they had been intimately acquainted for years, were members of the same church, and of the same association of Odd Fellows. We do not think such a presumption arises from the facts disclosed by the record. The testimony is direct that Weller had very little knowledge of Lumpkin's financial affairs.

It is said that the purchase was made with undue haste, and without the precautions which a man of ordinary business prudence would have taken; but it is apparent that Weller at the time was chiefly concerned to raise the money required in his settlement with the board of supervisors, and that he was willing to incur the risk of some loss of money to procure it. But he cannot be said to have been imprudent in making the purchase. It is true, he did not know the value of the property at the time, and that he gave his notes for several hundred dollars more than its value, as shown by the invoice which was afterwards taken; but it was necessary for him to have the money before an invoice could be taken, and the agreement of purchase provided

for the giving of proper credits in case the property should prove to be worth less than the amount of his notes, and such credit was in fact afterwards given. It is true he did not read the bill of sale with care before closing the transaction, but it had been drawn by an attorney in whom he had confidence, and his course was not unnatural nor unusual.

The appellant places much stress upon certain dealings between the parties which occurred after the sale of the lumber yard was concluded, but they were not connected with that sale, and cannot be considered in determining its character. It is said that Lumpkin retained possession of the yard after the sale was made, and that he afterwards gave prices on at least one bill of lumber in his own name; also, that he made statements to different persons showing that he had fully disclosed to Weller the fact that the plaintiff held a mortgage on the property before the sale was completed. Lumpkin remained .in the yard after the sale, but he did so for the purpose of assisting Weller in the business. His acts in offering to furnish a bill of lumber in his own name, and stating to others that Weller knew of the plaintiff's mortgage when he purchased,—if such statements were made,—were not with the knowledge nor consent of Weller, and would not affect his interests. It satisfactorily appears that Weller took possession of the property included in the bill of sale when it was delivered. Blanden at one time knew of the plaintiff's claim, but the evidence fails to show that he remembered it when the sale was made. Scott did know of it at that time, although he was told the plaintiff had waived it to allow the sale to be made. He and Blanden interested themselves to have the sale effected, Scott going to the office of the attorneys interested with the matter to see that the bill of sale was properly drawn; but what he and Blanden did in regard to it

was not done as agents for Weller, nor in behalf of the intervener, but for the purpose of having Weller secure the money needed in his settlement, and thus to release themselves from liability on his official bond. Weller had not authorized them to act for him, and at that time it had not been arranged that the intervener should take the notes.

It is said that, even if Weller did not know of the plaintiff's mortgage when he gave his notes and took the bill of sale, he acquired that knowledge before the notes were paid. The sale to Weller was valid, and could not have been defeated. He took the property without notice of any kind that the plaintiff held a claim against it, and gave his notes for the purchase price. He immediately paid the smaller of the two notes by giving another to the intervener. The other note was negotiable, and after a credit of five hundred and sixty-three dollars and thirteen cents, for deficiency in value of lumber, was indorsed thereon, and before it was due, it was transferred to intervener, and credit therefor given to Lumpkin on the amount he was owing intervener. The indebtedness of seventeen hundred dollars from Lumpkin to Weller had been canceled. Under these circumstances the liability of Weller on the notes given for the lumber yard was fixed, and he is entitled to protection as an innocent purchaser to the full amount of the consideration given, and the intervener acquired title to the note which is not subject to defense on the part of Weller, and cannot be defeated by the plaintiff.

We have not found it practicable to review at length each point discussed by counsel for the appellant. What we have said disposes of the controlling questions of the case. There were some circumstances well calculated to cast suspicion upon the good faith of the parties connected with the transactions in controversy, but the claims made by the appellees are reasonable,

and supported by direct and credible evidence, while the claims of the appellant rest largely upon circumstances which, though suspicious in themselves, do not show fraud conclusively, and, so far as material, have been satisfactorily explained. AFFIRMED.